IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-01142-MSK-KMT

TIMOTHY S. TUTTAMORE,

    Applicant,

v.

WARDEN BLAKE R. DAVIS,

    Respondent.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF *HABEAS CORPUS*

**THIS MATTER** comes before the Court pursuant to Mr. Tuttamore's Amended Petition **(# 17)** for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241, the Government's response **(#31)**, and Mr. Tuttamore's reply **(# 34)**.[1]

### BACKGROUND

Mr. Tuttamore is an inmate of the Federal Bureau of Prisons ("BOP"). On May 28, 2009, a search of Mr. Tuttamore's cell revealed a razor blade hidden inside an intercom box. Prison officials wrote an Incident Report, charging Mr. Tuttamore with the disciplinary offense of Possessing a Dangerous Weapon.

---

[1] Also pending are a motion **(# 28)** by Mr. Tuttamore to "refer back to [his] original preliminary response," Mr. Tuttamore's Objections **(# 29)** to a Minute Order **(# 24)** entered by the Magistrate Judge, and a motion **(# 32)** by Mr. Tuttamore seeking to conduct discovery. The Court finds that, given the limited scope of issues before this Court and the clear record that this Court considers, the request for leave to conduct discovery is without merit. As to the remaining matters, the Court finds that they do not affect the reasoning contained herein, and are thus denied as moot.

1

The BOP promptly suspended processing of the Incident Report, referring the matter to the Federal Bureau of Investigation for possible criminal charges. The FBI declined to prosecute, and the matter was returned to the BOP on or about June 30, 2009. The BOP then commenced internal disciplinary proceedings against Mr. Tuttamore.

The charge against Mr. Tuttamore was heard by a BOP Hearing Officer on July 7, 2009. Mr. Tuttamore waived his right to call witnesses or to testify, relying instead upon a four-page written statement, supplemented by a one-page written statement he had previously provided to BOP investigators. Mr. Tuttamore denied having knowledge of the razor blade's existence, denied that he had the ability to open the intercom box, and contended that the details of the charge (*i.e.* the presence of a magnet attached to the non-magnetic intercom box) were fabricated in retaliation for Mr. Tuttamore having pursued another lawsuit against prison officials. The Hearing Officer found the BOP witnesses more credible, rejected Mr. Tuttamore's various arguments, and found Mr. Tuttamore guilty of the charge. Mr. Tuttamore was sanctioned with the disallowance of 41 days of earned good time, 60 days of disciplinary segregation, and loss of certain privileges.

Mr. Tuttamore's instant Petition **(# 17)**, pursuant to 28 U.S.C. § 2241, contends that his disciplinary conviction was obtained in violation of the United States Constitution in five respects: (i) he was deprived of Due Process, in that he was refused the opportunity to obtain and present exculpatory evidence, *i.e.* the magnet, intercom box, and razor blade; (ii) he was denied Due Process in that "the proper appeal remedies" were not followed, although the particular "appeal remedies" Mr. Tuttamore refers to in this argument are not entirely clear; (iii) the BOP failed to comply with various provisions of 28 C.F.R. § 541 governing inmate discipline; (iv) the

Hearing Officer's finding of guilt "was out of vindictiveness to retaliate" against him; and (v) there was insufficient evidence to support to Hearing Officer's finding of guilt.[2]

## ANALYSIS

### A. Standard of review

In considering Mr. Tuttamore's filings, the Court is mindful of his pro se status, and accordingly, reads his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Pro se status does not relieve Mr. Tuttamore of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Mr. Tuttamore according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

### B. Review of disciplinary proceedings

The Fifth Amendment to the United States Constitution guarantees persons faced with deprivations of liberty or property – including inmates threatened with the loss of good time credit – Due Process. However, in the prison context, inmates faced with disciplinary charges enjoy only a circumscribed right to Due Process. *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The inmate must receive advance notice of the charges; the opportunity, when possible,

---

[2] Mr. Tuttamore relies heavily on an affidavit **(# 5)** that sets forth his factual contentions in greater detail. In some respect, that affidavit amplifies or extends arguments beyond those expressly set forward in his Amended Petition. The Court will nevertheless construe Mr. Tuttamore's filings liberally, and will attempt to address any cognizable argument Mr. Tuttamore may be making.

to call witnesses and present documentary evidence in his defense; and a written determination stating the Hearing Officer's reasons for his or her decision. *Id.* In addition, the inmate is entitled to require that the Hearing Officer's determination be "supported by some evidence in the record." *Id.* The "some evidence" requirement does not require this Court to examine the entire hearing record, to make an independent examination of the credibility of witnesses, or to re-weigh the evidence; rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached." *Id.* at 455-56. Mr. Tuttamore raises claims that fall within the scope of *Hill*'s protections, as well as claims falling outside that realm. The Court will first address those claims that touch, directly or indirectly, on the entitlements found in *Hill*, and will address the remaining contentions thereafter.

1. Advance notice of the charges

Mr. Tuttamore does not dispute that he received a copy of the Incident Report charging him with prohibited possession of the razor blade, but he contends that he did not receive that incident report until approximately 30 days after the search of his cell. He contends that this delay violates BOP Program Statement 5270.07.[3] *See* 28 C.F.R. § 541.11.

That policy provides that BOP staff shall "advise each inmate in writing . . . of the disciplinary system within the institution and the time limits thereof." 28 C.F.R. § 541.11(b). The Program Statement then references an included "Table 2," entitled " Time Limits In Disciplinary Process." The first two entries on the table, "Staff becomes aware of inmate's involvement in the incident" and "Staff gives inmate notice of the charges by delivering Incident

---

[3]Program Statement 5270.07 has since been superseded by Program Statement 5270.08, but for purposes of this matter, no substantive change was effected.

4

Report," are separated by a time period described as "ordinarily maximum of 24 hours." However, a note accompanying the table explains that "these time limits are subject to exceptions as provided in the rules."

One of these exceptions is found in Chapter 5 of the Program Statement. 28 C.F.R. §541.14(b). The Program Statement provides generally that "staff shall conduct the investigation [into the incident] promptly," and BOP commentary on this provision explains that "it is suggested that the investigation be initiated and ordinarily completed within 24 hours" of an investigator being designated. However, different rules apply "when it appears likely that the incident may be the subject of criminal prosecution." 28 C.F.R. § 541.14(b)(1). In such circumstances, "the investigating officer shall suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation or other investigative agency interviews had been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur." *Id.* Thus, the general "rule" – to the extent that the 24 hour period referenced in Table 2 can be said to have any binding effect – is inapplicable where the conduct in question is referred to the FBI for possible prosecution.

Here, it is undisputed that the BOP promptly turned Mr. Tuttamore's case over to the FBI for possible criminal prosecution, thus tolling the time period for delivery of the Incident Report. Mr. Tuttamore thereafter received a copy of the Incident Report immediately after the FBI declined to recommend prosecution. Thus, Mr. Tuttamore is incorrect in his assertion that the delay in delivery of the Incident Report to him constituted a violation of BOP rules, and the record reflects that Mr. Tuttamore received all of the Due Process protection he was entitled to in this regard.

5

    2. <u>Opportunity to present evidence</u>

  Mr. Tuttamore contends that he requested the opportunity to examine the magnet, razor blade, and intercom box in advance of the hearing, as well as requested the Hearing Officer to examine those items. Although the hearing was not transcribed, making it impossible to determine what oral requests Mr. Tuttamore made during the hearing, it is undisputed that Mr. Tuttamore's written statement to the Hearing Officer argued that "my intercom box is stainless steel . . . magnets don't stick to stainless steel," asked the Hearing Officer to "come into my cell, use the same magnet they said they found and the same razor and see if it's possible to reenact such a scenario with the same plate (faceplate) they said it could be done with." Thus, the Court will assume that Mr. Tuttamore requested that the magnet and intercom box be produced as evidence and considered by the Hearing Officer. The Hearing Officer's report indicates that although the Hearing Officer examined evidence in the form of "one page of photos," it does not appear that the Hearing Officer examined the actual magnet and intercom box at issue.

  Although *Hill* entitles an inmate to present requested evidence (subject to the BOP's right to exclude evidence on safety or security grounds, among others), no constitutional injury arises when the inmate is arbitrarily prevented from introducing evidence that would have been irrelevant. *Henard v. Anderson*, 27 Fed.Appx. 693, 695 (7th Cir. 2001) (unpublished), *citing Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992); *see also Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (explaining that "it would be useful for the [Hearing Officer] to state its reason for refusing [to examine certain evidence], whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases"). Here, as the Hearing Officer noted, the question of whether a magnet would stick to the intercom box or not was irrelevant to the question of

whether Mr. Tuttamore possessed the razor blade that was found.  The discovery and removal of the "magnet" was an event that precipitated the staff's discovery of the razor blade, and, arguably,  evidence that a magnet would not stick to the intercom box in the way described by the Incident Report might partially impeach the credibility of the prison staffer describing the discovery of the razor blade.[4]  But ultimately, the question of whether the intercom box was magnetic or not is a collateral issue whose resolution does not squarely address the ultimate issue considered by the Hearing Officer – whether Mr. Tuttamore possessed a razor blade in the intercom box.  Thus, the Hearing Officer's refusal to receive and examine otherwise irrelevant physical evidence does not amount to a violation of Mr. Tuttamore's Due Process rights.

       3. <u>Conclusion supported by some evidence</u>

Mr. Tuttamore does not dispute that he received a written report from the Hearing Officer explaining the Hearing Officer's findings, but Mr. Tuttamore argues, in a variety of ways, that the Hearing Officer's findings were not supported by the evidence in the record.  As noted above, this Court does not review the entirety of the record and re-weigh the evidence, nor does it require that the evidence rise to any particular quantum of persuasiveness.  *Hill*, 472 U.S. at 457.  Even "meager" or indirect evidence that supports the Hearing Officer's conclusion is

---

[4] The contention at issue was that the razorblade was found in the intercom box. If the only way that the razorblade could be in the intercom box was as the result of a magnet attachment, Mr. Tuttamore's contention would have greater merit. But that is not necessarily the case. For example, what appeared to the staffer searching Mr. Tuttamore's cell to be a "magnet," attached to the intercom box, might have been something else - a plug or other attachment mechanism. The Hearing Officer considered this option and found in the report that the razorblade could have been in the intercom box by virtue of a magnet or other means.  Mr. Tuttamore does not challenge these findings, and there is nothing in the record to suggest their inaccuracy.

sufficient. *Id.* Relief is warranted only where the record "is so devoid of evidence that the findings of the [Hearing Officer] were . . . arbitrary." *Id.*

Here, there was sufficient evidence in the record to support the Hearing Officer's findings. The Hearing Officer relied on the Incident Report, containing the statements of the prison staffer who discovered the razor blade. An Incident Report alone can constitute "some evidence" sufficient to support a Hearing Officer's determination. *See Ruelas v. Zuercher*, 240 Fed.Appx. 796, 797 (10th Cir. 2007) (unpublished); *Longstreth v. Franklin*, 240 Fed.Appx. 264, 267 (10th Cir. 2007) (unpublished). Moreover, the Hearing Officer explained that he found the Incident Report more credible than Mr. Tuttamore's denials because the prison staffer reporting the discovery has "nothing to gain by providing false statements, but [Mr. Tuttamore] would gain from doing so." Nothing in the record before this Court refutes that contention. Under these circumstances, while the evidence against Mr. Tuttamore might fall short of being persuasive enough to support criminal charges, it is certainly sufficient to satisfy the relaxed standard required by the Due Process clause in this situation.

Accordingly, because the record reveals that Mr. Tuttamore received all of the process required under *Hill*, his Petition is denied.

### C. Remaining contentions

Mr. Tuttamore raises several arguments that fall somewhat outside the scope of protections guaranteed to him by *Hill*.

Mr. Tuttamore argues that, in addition to not promptly receiving the Incident Report as required by BOP's Program Statements, he was not immediately removed from the prison's general population and placed in the Special Housing Unit, as is allegedly required by Program

Statement 5270.[5]

Mr. Tuttamore does not appear to complain that the failure of the BOP to take a harsher stand against him prior to the hearing deprived him of Due Process. Rather, this argument appears to simply be another attempt to impeach the credibility of the prison staffer who discovered the razor blade; in essence, Mr. Tuttamore is arguing that the alleged discovery of a weapon was fabricated by prison staff because they did not immediately invoke the full panoply of punishments that they were entitled to prior to the hearing. When correctly viewed as simply another form of attempted impeachment, this "claim" fails for the same reason that Mr. Tuttamore's challenge to the sufficiency of the evidence does. The Hearing Officer found this line of impeachment to be unpersuasive, and this Court does not attempt to re-weigh the Hearing Officer's findings regarding credibility.

Mr. Tuttamore also appears to argue that BOP staff violated another portion of Program Statement 5270, when the Unit Disciplinary Committee prematurely terminated a hearing regarding the Incident Report and failed to issue a decision on the matter. Chapter 6 of the Program Statement explains that the Unit Disciplinary Committee must conduct an "initial hearing" into the disciplinary charge shortly after it is levied. 28 C.F.R. § 541.15(b). The inmate must be given the opportunity to present evidence, which the Unit Disciplinary Committee must consider, and then the Committee either issues a determination on the charge or refers the matter to a Hearing Officer for further proceedings. 28 C.F.R. § 541.14(c), (d), (f).

---

[5] Presumably, Mr. Tuttamore is referring to Chapter 9 of the Program Statement, which provides that an inmate who is "pending a hearing on a violation of Bureau regulations" may be placed in Administrative Detention. 28 U.S.C. § 541.22(a)(1). Such placement is at the discretion of the Warden. *Id.*

9

Mr. Tuttamore does not deny that he received a hearing before the Unit Disciplinary Committee and that he presented evidence at that hearing, nor does he dispute that the Committee ultimately exercised its authority to refer the matter to a Hearing Officer. Mr. Tuttamore contends that he was not promptly provided with a copy of the Committee's written disposition, as required by 28 C.F.R. § 541.14(f).

This Court has some doubt that a referral of the matter to a Hearing Officer constitutes a "decision and disposition" triggering the right to a written decision, but even if it does, the Court finds that the record establishes that Mr. Tuttamore was promptly advised in writing of that determination. Although the record is unclear as to whether Mr. Tuttamore did indeed receive another copy of the Incident Report that included the completed "Committee Action" section, the record reflects that on the same day as the Committee Hearing, Mr. Tuttamore received a written notice of "Inmate Rights At Discipline Hearing" that included text indicating that the disciplinary charge against him had been "referred to the Discipline Hearing Officer for disposition." Thus, Mr. Tuttamore promptly received written notice that the Unit Committee had referred the charge against him to a Hearing Officer for further proceedings, thus satisfying the minimal requirements of § 541.14(f)

Mr. Tuttamore argues extensively that the charge against him was fabricated as retaliation for his having pursued claims against the BOP in other litigation. This argument fails for several reasons. To some extent, this argument is little more than yet another variation on attempted impeachment of the testimony of the staffer who discovered the razor blade – *i.e.* it ascribes to the staffer a motive to lie. The Hearing Officer's report makes clear that the Hearing

Officer considered Mr. Tuttamore's arguments in this respect, but found them unpesuasive.[6] Such a conclusion is readily supported by the evidence. Mr. Tuttamore's allegations of a conspiracy to retaliate against him are broad, vague, and speculative; indeed, it is not clear how the staffer that discovered the razor blade is alleged to be aware of, much less involved in, Mr. Tuttamore's other lawsuits.[7]

Finally, Mr. Tuttamore makes an unclear argument regarding the processing of his administrative grievance concerning the disciplinary conviction. He appears to contend that the Regional Director processing his grievance requested BOP investigators to look into his contention that the intercom box was non-magnetic, and that the investigators concluded that a magnet could indeed hold a razor blade in place as alleged. Mr. Tuttamore argues that "the same people" that wrote the Incident Report were the ones contacted by the Regional Director to assess the matter in the grievance stage, and that this violated Chapter 8 of Program Statement 5270. That portion of the Program Statement provides for inmates to invoke the administrative

---

[6]Specifically, the Hearing Officer found that "the staff member was in the performance of his duties when dealing with you and has no apparent reason not to report the matter truthfully."

[7]Moreover, it is somewhat unclear what an allegation of retaliation, even if meritorious, would accomplish for Mr. Tuttamore, given that the Court has concluded that there is sufficient evidence of his actual possession of a prohibited item to support his disciplinary conviction. Even assuming that some unidentified prison officials harbored retaliatory animus against Mr. Tuttamore, the record does not reflect that "but for" this animus, Mr. Tuttamore would have avoided the cell search and discovery of the razor blade. *See Brown v. Wyoming Dept. of Corrections*, 234 Fed.Appx. 874, 877-78 (10th Cir. 2007). Mr. Tuttamore's own written statement acknowledges that "other inmates [are] known . . . to have weapons found on mass unit shakedowns" and were promptly charged with disciplinary offenses. To the extent that Mr. Tuttamore could seek some other remedy (*e.g.* monetary damages) for such "retaliation," the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), would prevent him from doing so until he first succeeded in having the disciplinary conviction reversed, a task he has failed to achieve through this action.

remedy process as a form of appeal of a Hearing Officer's determination. 28 C.F.R. § 541.19. The role of the Regional Director in reviewing appeals of this type consists of ascertaining: (i) whether the Hearing Officer "substantially complied with the regulations on inmate discipline"; (ii) whether the Hearing Officer "based its decision on some facts . . ."; and (iii) whether an appropriate sanction was imposed. *Id.*

Mr. Tuttamore's argument that the Regional Director improperly sought to conduct an independent appraisal of the Hearing Officer's conclusion via "the same people" involved in the initial allegations does not implicate any of these requirements. The Regional Director states that "the incident report packet was reviewed and the discipline process was conducted according to policy," thus satisfying the requirements of § 541.19. The independent testing conducted by the Regional Director was apparently a response to Mr. Tuttamore's own request that "the issue of the magnet holding the razor blade be reviwed in lieu of taking someone's word on the issue," a request that exceeds the limited review contemplated by § 541.19. Thus, even assuming that the Regional Director erred in not seeking independent confirmation of the magnetic character of the intercom box – and the Court finds no such error – neither the provisions of § 541.19 or the Due Process clause are implicated.

## CONCLUSION

For the foregoing reasons, the Court finds Mr. Tuttamore's Amended Petition to be without merit is all respects, and the Amended Petition **(# 17)** is **DENIED** on its merits.[8] Mr.

---

[8] It is not clear to the Court whether 28 U.S.C. § 2253 requires the issuance of a Certificate of Appealability before Mr. Tuttamore may seek review of this ruling. To the extent such a Certificate is necessary, the Court has considered the standards of *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), and finds that Mr. Tuttamore has not made a substantial showing of the denial of a constitutional right such that reasonable jurists could disagree as to the disposition of

Tuttamore's motion seeking discovery **(# 32)** is **DENIED**, and Mr. Tuttamore's remaining motions and objections **(# 28, 29)** are **DENIED** as moot. The Clerk of the Court shall enter judgment and close this case.

Dated this 30th day of November, 2010

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge

---

his petition. Accordingly, the Court also denies a Certificate of Appealability.